STATE OF CONNECTICUT *v.* DANNY HILL
(11934)

PETERS, C. J., HEALEY, SHEA, DANNEHY and S. FREEDMAN, Js.

Argued March 6—decision released July 16, 1985

*A. A. Washton,* with whom was *Peter W. Rotella,* for the appellant (defendant).

*John F. Cocheo,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti,* state's attorney, for the appellee (state).

DANNEHY, J. After a jury trial the defendant was found guilty of arson murder in violation of General Statutes § 53a-54d.[1] Thereafter, in accordance with the provisions of that statute, the trial judge sentenced the defendant to a term of life imprisonment without eligibility for parole.[2] In his appeal from that judgment the

---

[1] "[General Statutes] Sec. 53a-54d. ARSON MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

[2] Section 53a-35b of the General Statutes defines "life imprisonment" to mean a definite sentence of sixty years.

defendant claims that: (1) the trial court unduly restricted his voir dire examination of the individual jurors; (2) the trial court erred in refusing to permit evidence of another's motive to commit the arson; (3) the arson murder statute violates his right to due process; and (4) the arson murder statute does not restrict the trial court's power to suspend or reduce the sentence required thereunder.

There is no dispute but that on February 7, 1982, at 11:28 p.m., a fire was reported in progress at 28 Beldon Street in New London. In the course of extinguishing the blaze, a fireman discovered in the top floor apartment of the building the dead body of an elderly woman. It was later determined that her death had resulted from asphyxiation due to smoke inhalation.

At the trial, the state introduced the testimony of an eyewitness who stated that, while at the first floor apartment of 28 Beldon Street on the evening of the fire, she saw the defendant sprinkle what smelled to her like gasoline onto some objects on the floor and then light a match. The landlord of the building testified that he had instituted proceedings to evict the defendant from the apartment he rented on the first floor and further that, on the night of the fire, he saw the defendant at the scene "with a big smirk" on his face. A New London police officer, who was also at the scene of the fire, testified that he, too, saw the defendant there and that he could smell gasoline emanating from the person of the defendant. Another police officer testified that, as a result of the ensuing investigation, an arrest warrant was issued for the defendant. He and another officer went to the defendant's home to advise him that he was under arrest. The defendant attempted to flee. He was apprehended after a short chase on foot.

The defendant offered an alibi defense. In support thereof, he introduced the testimony of two witnesses

who testified that the defendant was watching television with friends at the time the arson was committed. The defendant also attempted to offer evidence of a possible motive on the part of the landlord to commit the arson.

After the jury returned its verdict, the trial judge ruled that § 53a-54d mandated that the defendant be sentenced to a term of life imprisonment without eligibility for parole.

The defendant first contends that the trial court unduly restricted the scope of the voir dire examination by refusing to permit defense counsel to inquire of prospective jurors whether they would be inclined to attach greater credence to the testimony of a law enforcement officer merely because that witness was a law enforcement officer. We agree.

The record discloses that the panel of prospective jurors was comprised of approximately fifty people. During its examination of the first juror, the state asked: "Would the mere fact that a witness is a police officer mean to you that his testimony or her testimony is worth any more or any less than any other witness?" Defense counsel posed a similar question to the second juror. Prior to the examination of the third juror, the trial judge informed counsel that "I won't allow any further questions along the lines of the credibility of police officers; that is, merely because he is a police officer. That is an area that is covered in the Judge's charge to the Jury." Defense counsel indicated to the court that he believed this was a proper question but that he would try to "work it in another way" so as not to disobey the court's ruling.

The third juror was then asked by defense counsel whether she would attach more weight to the testimony of any witness merely because of that person's profession or occupation. The trial court would not allow the

question and an exception was duly noted. The same question was rephrased and repeated many times but to no avail. Thereafter, defense counsel attempted to question several more jurors regarding the credibility they would attach to the testimony of a police officer. Each time the trial court disallowed the question. Eventually, defense counsel realized the futility of pursuing this line of inquiry and refrained from doing so throughout the remainder of the voir dire examinations.

The right to a voir dire examination of each prospective juror in a criminal action is provided by § 54-82f of the General Statutes.[3] This right was established as a constitutional one in 1972 by inclusion in article IV of the amendments to the state constitution of the provision that "[t]he right to question each juror individually by counsel shall be inviolate." See *State* v. *Haskins*, 188 Conn. 432, 446, 450 A.2d 828 (1982); *State* v. *Anthony*, 172 Conn. 172, 174, 374 A.2d 156 (1976).

Examination of jurors on voir dire has a two-fold purpose; first, it permits the trial court to determine whether the prospective juror is qualified to serve and second, it aids counsel in exercising their rights to peremptory challenges. *State* v. *Haskins*, supra, 446. It is true that the extent to which the parties may go in such an examination rests largely within the discretion of the trial court and the exercise of that discre-

---

[3] "[General Statutes] Sec. 54-82f. VOIR DIRE EXAMINATION. In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

tion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted. *State* v. *Anthony,* supra, 174. "Nevertheless, in exercising its discretion, the court should grant such latitude as is reasonably necessary to fairly accomplish the purposes of the voir dire. Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case." *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152 (1956).

In this case, almost half of the witnesses called by the state were either police officers or fire officials. Their testimony was crucial to the state's case as it tended to corroborate the testimony of the sole eyewitness, a witness whose credibility was highly questionable in light of the conflicting statements she had made prior to the trial.[4] Similarly, crucial testimony of police officers concerning the strong odor of gasoline emanating from the defendant on the night of the fire and his attempted flight upon arrest was evidence which, if believed, would have supported an inference of guilt. When important testimony is anticipated from certain witnesses whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination should be permitted. See *Brown* v. *United States,* 338 F.2d 543 (D.C. Cir. 1964); *Sellers* v. *United States,* 271 F.2d 475 (D.C. Cir. 1959); *Harvin* v. *United States,* 297 A.2d 774 (D.C.

---

[4] The only witness to connect the defendant directly to the fire was Mary Ann Hill, the defendant's sister-in-law. In her initial statement to the police, Mary Ann implicated the defendant. She later recanted that statement when she testified before the grand jury. At trial, she explained that her story had changed because of threats from her husband that her children would be taken from her if she testified against the defendant.

1972). It was of vital importance to the defendant that if any such inclination existed it be brought to light. He was entitled to explore this area of possible disqualification prior to the impaneling of the jury. Only then could he intelligently challenge for cause or exercise his right of peremptory challenge. *State* v. *Higgs,* supra, 144.

Nothing could be plainer than that a predisposition to attach greater or less credence to a witness' testimony simply because of that witness' position as an officer is inconsistent with the defendant's constitutional and statutory right to an impartial jury. The denial of such a fundamental right cannot be countenanced. The trial court's refusal to allow defense counsel to ask prospective jurors whether they would be inclined to give more weight to the testimony of a police officer merely because of that person's official status constituted an abuse of discretion. We find error and order a new trial.

Our holding is dispositive of this appeal; however, we will consider certain of the defendant's other claims of error which are likely to arise upon retrial.

During the course of the trial, the defendant sought to introduce evidence of a financial motive on the part of the landlord of the burned building, John M. Piscezek, to commit the arson. In his cross-examination of Piscezek, defense counsel established that the defendant and his wife had entered into an option agreement with the witness to purchase the building at 28 Beldon Street. The witness was then asked when he purchased the property. The state objected, claiming that the question was irrelevant. In the absence of the jury, the defendant argued that the question was preliminary to a series of questions regarding the purchase price paid by the witness, insurance coverage and

the beneficiary of any such insurance proceeds. The trial court sustained the objection and an exception was taken.

The defendant then attempted, through a witness of his own, to show that 28 Beldon Street was insured, the amount of coverage, and the person to whom the insurance proceeds were payable. The state again objected, this time claiming that any evidence of Piscezek's purported motive was speculative. The objection was sustained by the trial court and the defendant took an exception.

It is always competent for a defendant to give evidence tending to show that another committed the crime with which the defendant has been charged. *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Marshall,* 166 Conn. 593, 601, 353 A.2d 756 (1974). Evidence of another's motive, however, is not enough where there is no other proof in the case which tends to connect such other person with the offense charged. *State* v. *Marshall,* supra, 601.

Upon our review of the record, we find that the testimony concerning Piscezek's financial motive should have been admitted. Here, there was more than mere evidence of a motive on the part of a third party. Piscezek admitted that he was present at 28 Beldon Street on the night of the fire. He left the premises sometime between 10 and 10:30 p.m. A fire marshall conceded that the fire could have started about 10:30 p.m. Lonnie Dixon, a tenant on the second floor of the building, heard someone drive away in a Volkswagen about 10:45 p.m. and about one-half hour later, he smelled smoke and saw flames. Piscezek had driven to the building in a Volkswagen. He was the last person known to have left the premises prior to the outbreak of the fire except for the testimony implicating the defendant.

Although a court has wide discretion in its rulings on the relevancy of evidence; *State* v. *Gold,* supra, 646; we conclude that the trial court abused its discretion in excluding the evidence concerning Piscezek's financial motive. The evidence establishing Piscezek's presence at 28 Beldon Street just prior to the outbreak of the fire tended to connect him with the crime. Once that evidence was adduced, other evidence concerning Piscezek's financial motive became admissible. Id., 647. The weight to be accorded such evidence would, of course, have been determined by the jury. Id.

The defendant also contends that the arson murder statute violates his right to due process of law by creating a conclusive presumption of intent to cause the death of a person once it is proven beyond a reasonable doubt that the accused intended to commit an arson. Specifically, he claims that the jury, in accordance with the instructions given by the trial court, was forced to find a murder once they determined beyond a reasonable doubt that the defendant intended to commit the arson. This, he argues, constituted an improper invasion of the jury's factfinding function and as a result, he was denied his constitutional right of due process.

The defendant was tried and convicted upon an indictment charging him with the crime of arson murder. An indictment for arson murder in violation of General Statutes § 53a-54d does not carry with it charges of homicide in a lesser degree than that charged. See *State* v. *Morin,* 180 Conn. 599, 430 A.2d 1297 (1980). The crime of arson murder as defined in relevant part by § 53a-54d provides that: "A person is guilty of murder when . . . acting . . . alone . . . he commits arson and, in the course of such arson, causes the death of a person." By its explicit terms, the statute embodies a completed arson. The

intent to cause death, which distinguishes murder as defined in General Statutes § 53a-54a from arson murder, is not an element of arson murder. *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691 (1985). The trial court, therefore, did not err in refusing to instruct the jury, as requested by the defendant, that "you must consider whether the defendant intended to cause the death of another person when he set the fire . . . ."

We need not consider the defendant's final claim, that the arson murder statute does not restrict the trial court's power to suspend or reduce the sentence required thereunder, in light of our holding that he is entitled to a new trial. We note only that the arson murder statute does not preclude suspension of part of the mandatory life sentence. See *State* v. *Dupree,* supra.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.