## STATE OF CONNECTICUT *v.* ANTHONY ROGERS (12129)

SHEA, DANNEHY, SANTANIELLO, CALLAHAN and MENT, Js.

Argued June 13—decision released September 3, 1985

*Robert J. Sweeney,* assistant public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SANTANIELLO, J. On February 9, 1983, the defendant was found guilty of robbery in the third degree in violation of General Statutes § 53a-136[1] after a jury trial. In accordance with the provisions of that statute, the court sentenced the defendant to the custody of the commissioner of correction for a term of five years. The defendant appealed, claiming that the trial court erred in impermissibly restricting defense counsel's voir dire examination of prospective jurors.

---

[1] "[General Statutes] Sec. 53a-136. ROBBERY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of robbery in the third degree when he commits robbery. . . ."

The following facts are uncontroverted. Anthony Paladino, a route salesman for Frito Lay, Inc., had made deliveries on July 7, 1982, to the D & S Variety Store located in the Dixwell Plaza in New Haven. While returning to his delivery truck he was approached by two black males who attempted to sell him a knife. As he took out his wallet to pay for the knife, he was grabbed around the neck from behind by a third person, a large black male. A struggle ensued and Paladino was thrown to the ground. During the struggle, he was robbed of his wallet, which contained cash, his driver's license and personal charge cards. Later that day, the defendant was apprehended, identified as the assailant and arrested.

The case was assigned for trial by jury. Twenty-four potential veniremen were examined from which a jury of six plus two alternate jurors was selected. Thereafter, testimony commenced and the state called six witnesses, three of whom were police officers. Identification of the defendant as the robber was crucial to the state's case, since the defendant had offered an alibi defense. In support thereof, he introduced testimony from his mother that he was home at the time of the robbery. The defendant corroborated this testimony. A third defense witness, Peter Cox, who testified that he witnessed the robbery, and saw the perpetrator, stated that the defendant was not the robber. On cross-examination, the defendant denied that he ever told a police officer that he "got jacked up on a robbery charge" and that he had witnessed a struggle but had not participated in any robbery.

The defendant's sole contention on appeal is that he was denied a fair trial because the trial court impermissibly restricted defense counsel's voir dire examination of prospective jurors. During the course of the voir dire examination, defense counsel asked certain questions designed to ascertain whether or not the

prospective jurors would be able to perform their duties without bias, prejudice or partiality. During examination of one juror, defense counsel asked: "The State has indicated that possibly there could be police officers who would testify in this matter. Would you give a police officer's testimony any extra believability or credibility merely because it's a police officer testifying?" The trial court refused to allow the question. On another occasion, the state's attorney queried: "Would you be able to exclude feelings of sympathy and compassion—?" At that point the court interrupted and refused to allow this question, noting that the issue would be covered in his charge. On cross-examination of the same prospective juror, defense counsel inquired: "It was the same question Mr. Fasano asked about sympathy. Would you be able to exclude sympathy for anybody?" Again the court disallowed the question. A third juror was asked: "And if the judge were to tell you that you are to base your decision on only what you see and what you hear in the courtroom and not what might have gone on when you weren't in here, would you do your best to follow those instructions?" The court held this to be an improper question. Defense counsel then attempted to rephrase the question: "If the Judge were to tell you that you are to base your decision on the evidence that you see and hear . . . . [The Court:] I'm not going to allow that question anyway. It would be part of the Court's charge."[2]

---

[2] The questions which the trial judge prohibited defense counsel from asking the three prospective jurors were not put to each and every venireman. Defense counsel indicated that he did not wish to prolong the voir dire process by asking each prospective juror the questions that the court had found objectionable. The court stated: "I don't think you have to lay that foundation in each and every—and I wouldn't consider it a waiver by the fact that you didn't go ahead and reask all of those questions, and I indicated that to you before." The court then stated: "I'm not requiring you to repeat all the inadmissible questions to each prospective juror." Thus, the record was adequately preserved.

The trial court restricted defense counsel's questioning on voir dire, apparently because it believed that the subject matter of the questions would be adequately covered in the court's charge, or had already been explained in instructions given prior to voir dire. Although the court's preliminary instructions to the panel were expansive, thorough and well done, the fact that a court instructs the jury panel prior to voir dire and or charges the jury at the conclusion of the trial does not satisfy the defendant's constitutional right to examine, personally or by counsel, each juror. The court's charge does not necessarily delve into the mental processes of the jurors. It does not reveal the innermost thoughts, prejudices or feelings of the individual jurors.

"The right to a voir dire examination of each prospective juror in a criminal action is provided by § 54-82f of the General Statutes.[3] [The court has the duty to analyze individual questioning under this section and limit examination to questions relating to (1) juror's qualifications, (2) interest, if any, in the subject matter of the action, and (3) relations with the parties thereto.] This right was established as a constitutional one in 1972 by inclusion in article IV of the amendments to the state constitution of the provision that '[t]he right to question each juror individually by counsel shall be inviolate.' See *State* v. *Haskins*, 188 Conn. 432, 446, 450

[3] "[General Statutes] Sec. 54-82f. VOIR DIRE EXAMINATION. In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

A.2d 828 (1982); *State* v. *Anthony,* 172 Conn. 172, 174, 374 A.2d 156 (1976)." *State* v. *Hill,* 196 Conn. 667, 671, 495 A.2d 699 (1985). This right cannot be replaced by a court's charge, which is addressed to a group and does not elicit answers. Examination of jurors on voir dire has a two-fold purpose; it permits the trial court to determine whether the prospective juror is qualified to serve and it aids the parties in exercising their rights to peremptory challenges. *State* v. *Haskins,* supra, 446. It is true that the extent of the voir dire examination rests largely within the discretion of the trial court, and the exercise of that discretion will not constitute reversible error unless it has clearly been abused or harmful prejudice appears to have resulted. *State* v. *Anthony,* supra. "Nevertheless, in exercising its discretion, the court should grant such latitude as is reasonably necessary to fairly accomplish the purposes of the voir dire. Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case." *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152 (1956).

In this case, police testimony was crucial to the state's attempt to disprove the defendant's alibi defense. The defendant had allegedly made incriminating statements to a police officer to the effect that he "got jacked up on a robbery charge" and had witnessed a struggle but had not participated in any robbery. Were this contradiction considered as true, then the defendant's proffered "alibi" defense would have to be disbelieved.

"When important testimony is anticipated from certain witnesses whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether

a juror would have such an inclination should be permitted. See *Brown* v. *United States,* 338 F.2d 543 (D.C. Cir. 1964); *Sellers* v. *United States,* 271 F.2d 475 (D.C. Cir. 1959); *Harvin* v. *United States,* 297 A.2d 774 (D.C. 1972). It was of vital importance to the defendant that if any such inclination existed it be brought to light. He was entitled to explore this area of possible disqualification prior to the impaneling of the jury. Only then could he intelligently challenge for cause or exercise his right of peremptory challenge. *State* v. *Higgs,* supra, 144.

"Nothing could be plainer than that a predisposition to attach greater or less credence to a witness' testimony simply because of that witness' position as an officer is inconsistent with the defendant's constitutional and statutory right to an impartial jury. The denial of such a fundamental right cannot be countenanced. The trial court's refusal to allow defense counsel to ask prospective jurors whether they would be inclined to give more weight to the testimony of a police officer merely because of that person's official status constituted an abuse of discretion." *State* v. *Hill,* supra, 672–73.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion SHEA and DANNEHY, Js., concurred.

CALLAHAN, J., with whom, MENT, J., joins, concurring. In light of *State* v. *Hill,* 196 Conn. 667, 495 A.2d 699 (1985), I concur with the result.