STATE OF CONNECTICUT *v.* HERBERT DOLPHIN
(12235)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued January 14—decision released May 19, 1987

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SANTANIELLO, J. The dispositive issue in this appeal is whether the trial court erred in restricting the scope of questioning during the voir dire examination of the potential jurors. The defendant, Herbert Dolphin, after a trial to a jury, was found guilty of robbery in the first degree and subsequently was found to be a persistent dangerous felony offender by a panel of three judges. The defendant appealed from the judgment of these convictions. We find error and remand the case for a new trial.

The facts relevant to this appeal are as follows: On March 22, 1981, at approximately 3:30 a.m., Don Marshall, the victim, picked up the defendant hitchhiking along Whalley Avenue in New Haven and drove him to the corner of Ann and Kossuth Streets in that city. As the defendant exited Marshall's van, he turned around and, wielding a sawed-off shotgun, demanded Marshall's money. Marshall had only two dollars, which he gave to the defendant who fled. Marshall then drove to a nearby gas station in the hope of locating the police. When he arrived at the station, he found sev-

eral police officers and informed them that he had just been robbed. At the suggestion of one of the officers, Marshall accompanied Officer Mark Kunza in an attempt to find the person who had committed the robbery. As the two approached the intersection of Congress Avenue and West Street, Marshall saw the defendant standing outside the Flaming Knights Motorcycle Club, and identified the defendant to the police officer as the man who had robbed him. Upon seeing the police car, the defendant ran around the side of the building toward the back of the club. As he fled, the defendant tossed an object over a fence located at the rear of the building. The defendant then attempted to climb the fence and when he was unable to do so, attempted to enter the building through a side door, but was apprehended by Kunza. The officer arrested and searched the defendant, seizing two one dollar bills and two twelve gauge shotgun shells from the defendant's person. Following the arrest, Kunza searched the lot on the other side of the fence and found a double barrel sawed-off shotgun lying in the bushes.

The defendant was charged in a two part indictment with the crimes of robbery in the first degree in violation General Statutes § 53a-134 (a) (2)[1] and being a persistent dangerous felony offender in violation of

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

General Statutes § 53a-40 (a).[2] After a trial to a jury on part A of the indictment, the first degree robbery charge, the defendant was found guilty. Thereafter, the defendant entered a plea of not guilty to part B of the indictment and elected a trial to the court. Following a trial before a panel of three judges, the defendant was found to be a persistent dangerous felony offender, and was sentenced to a term of imprisonment of not less than twenty-five years nor more than life.

On appeal, the defendant claims that the trial court erred in: (1) restricting the voir dire examination of the prospective jurors; (2) refusing to remove the leg restraints placed on the defendant during trial; (3) refusing to instruct the jury on the lesser offenses of robbery in the second degree and robbery in the third degree; (4) instructing improperly the jury on circumstantial evidence and the burden of proof; (5) failing to instruct the jury on the statutory definition of "intent"; (6) denying his motions for dismissal, acquittal and in

---

[2] "[General Statutes] Sec. 53a-40. PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

arrest of judgment on the charge of being a persistent dangerous felony offender; (7) denying his challenge to the jury array; and (8) denying his motion to correct an illegally imposed sentence. We find error on the defendant's first claim and remand the case for a new trial.

I

The record reflects that fifty-six potential veniremen were examined from whom a jury of twelve, plus two alternates, were selected. During the voir dire examination, both the state's attorney and defense counsel sought to question the first member of the venire to ascertain whether she would give more or less credibility to a police officer's testimony solely because of his occupation. The trial court, however, refused to allow either attorney's inquiry. During the examination of the second venireman, defense counsel attempted to pursue the same line of questioning. Again the court interrupted defense counsel and refused to allow the question. Prior to the examination of the third prospective juror, defense counsel stated that he intended to question the remaining potential jurors "about whether they would put more weight on a policeman's testimony or that of another witness solely because he is a policeman," but would not continue that line of questioning because the court "has made it clear . . . that [it] would sustain the objection." The court replied, "I have sustained the objections to certain questions that have been asked. As far as I'm concerned you don't have to repeat the question to each."

The defendant now claims that the trial court violated his constitutional right to question the members of the venire and abused its discretion in restricting the voir dire examination. We agree with the defendant's contention.

Section 19 of article first of the Connecticut constitution, as amended by article IV,[3] provides in part: "In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate." See, e.g., *Lamb* v. *Burns,* 202 Conn. 158, 162, 520 A.2d 190 (1987); *State* v. *Marsh,* 168 Conn. 520, 521, 362 A.2d 523 (1975). Further, General Statutes § 54-82f[4] provides that "[i]n any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. . . ."

Because of the wide range of cases submitted to juries and the impossibility of establishing a set pattern of questions appropriate for the voir dire examination of

[3] The fourth amendment to Connecticut constitution provides: "Section 19 of article first of the constitution is amended to read as follows:

"The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[4] "[General Statutes] Sec. 54-82f. VOIR DIRE EXAMINATION. In any criminal action tried before a jury, either party shall have the right to examine, personally or by his counsel, each juror outside the presence of other prospective jurors as to his qualifications to sit as a juror in the action, or as to his interest, if any, in the subject matter of the action, or as to his relations with the parties thereto. If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel, or in the action, as the judge determines. The right of such examination shall not be abridged by requiring questions to be put to any juror in writing and submitted in advance of the commencement of said action."

prospective jurors, the trial court is vested with broad discretion in determining the scope of counsel's inquiry. *State* v. *Anthony,* 172 Conn. 172, 175, 374 A.2d 156 (1976). The court has a duty to analyze the examination of venire members and to act to prevent abuses in the voir dire process. Accord *State* v. *Haskins,* 188 Conn. 432, 450 A.2d 828 (1982). Therefore, the court's actions ordinarily will not be disturbed unless the court has clearly abused its discretion or it appears that prejudice to one of the parties has resulted. *State* v. *Dahlgren,* 200 Conn. 586, 601, 512 A.2d 906 (1986); *State* v. *Rogers,* 197 Conn. 314, 318, 497 A.2d 387 (1985); *State* v. *Anthony,* supra, 174; *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152 (1956).

The exercise of the court's discretion, however, must be tempered to comport with the goals of the voir dire examination. We have recognized that the purpose of examining members of the venire is twofold: first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge. See *State* v. *Rogers,* supra; *State* v. *Hill,* 196 Conn. 667, 671, 495 A.2d 699 (1985); *State* v. *Anthony,* supra, 174–75; *Duffy* v. *Carroll,* 137 Conn. 51, 56, 75 A.2d 33 (1950). "[T]he court should grant such latitude as is reasonably necessary to fairly accomplish the purposes of the voir dire. Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case." *State* v. *Higgs,* supra.

Recently, this court has had the opportunity to address essentially the same issue raised by the defend-

ant in the present case: namely, whether the restriction of questions to prospective jurors concerning their possible predisposition to give additional weight to a police officer's testimony solely because of the officer's occupation constitutes reversible error. See *State* v. *Rogers,* supra; *State* v. *Hill,* supra. In *State* v. *Hill,* supra, 672–73, we reasoned that when important testimony is anticipated from certain witnesses whose official status is such that some jurors might be inclined to attach greater or less credence to that testimony, both counsel should be permitted to question the jurors with respect to this possible bias. Accordingly, we concluded that the trial court's refusal to allow defense counsel to inquire whether the jurors would be inclined to give more weight to a police officer's testimony because of his status constituted reversible error. Similarly, in *State* v. *Rogers,* supra, 318–19, we held that when a police officer's testimony was crucial, the trial court abused its discretion by refusing to allow defense counsel to question prospective jurors on whether they would give more credence to a police officer's testimony solely because of his official status.

The state contends that our holdings in *Hill* and *Rogers* are not necessarily dispositive of this case.[5] First, the state claims that the trial court's preliminary instructions to the prospective jurors as to the weight

[5] Initially, the state argues that we should refuse to consider this issue because the defendant had failed to exhaust his peremptory challenges prior to the selection of the twelve jurors who sat in judgment. Quoting *State* v. *Vitale,* 190 Conn. 219, 225, 460 A.2d 961 (1983), the state claims that "[u]nless all [the defendant's] peremptory challenges have been exercised before the completion of jury selection, it is presumed that no juror was permitted to serve whom the defendant regarded as biased or unsuitable, although he might have preferred others."

The defendant, however, must be entitled to explore the area of possible bias or partiality before he can intelligently challenge for cause or exercise his right of peremptory challenge. *State* v. *Hill,* 196 Conn. 667, 673, 495 A.2d 699 (1985); *State* v. *Higgs,* 143 Conn. 138, 144, 120 A.2d 152 (1956). It cannot be said, then, that the defendant permitted a juror to serve whom

to be afforded to a police officer's testimony, coupled with both counsels' opportunity to question the jurors on whether they could follow the court's instructions, adequately provided the information needed to aid counsel in exercising their peremptory challenges. We find the state's attempt to distinguish *Hill* and *Rogers* from the present case without merit.

As we stated in *State* v. *Rogers,* supra, 317, "[a]lthough the court's preliminary instructions to the panel were expansive, thorough and well done, the fact that a court instructs the jury panel prior to voir dire and or charges the jury at the conclusion of the trial does not satisfy the defendant's constitutional right to examine, personally or by counsel, each juror. The court's charge does not necessarily delve into the mental processes of the jurors. It does not reveal the innermost thoughts, prejudices or feelings of the individual jurors." Similarly, a perfunctory inquiry as to whether a prospective juror will follow a court's preliminary instructions does not necessarily divulge any hidden prejudice or partiality harbored by the venireman.

Second, the state contends that, unlike the police officers' testimony in *Hill* and *Rogers,* the officers' testimony in this case was not pitted against the defendant's and therefore their credibility was not challenged. Again, we find the state's argument unpersuasive.

Here, two of the three witnesses called by the state were police officers, and their testimony was crucial to the state's case. In order to establish that the defendant committed a robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), it was incumbent upon the state to prove beyond a reason-

---

he regarded as biased, without first having had the opportunity to inquire into that possible bias. Therefore, the fact that the defendant did not exercise all of his peremptory challenges does not foreclose his ability to raise the present claim of error.

able doubt that the defendant, in the course of the commission of a robbery, or in immediate flight therefrom, was armed with a deadly weapon. By necessary implication, the state was required to prove that the defendant was armed with a weapon, whether loaded or unloaded, from which a shot may have been discharged. General Statutes § 53a-3 (6).

At trial, the state introduced the sawed-off shotgun found by Officer Mark Kunza in the lot next to the Flaming Knights Motorcycle Club as the weapon allegedly used by the defendant. Officer Roy Olson, a sergeant with the New Haven Police Department, testified as to the operability of the shotgun and Kunza testified concerning the defendant's actions at the motorcycle club which linked the defendant to the weapon. On direct examination, Kunza testified that he saw the defendant throw an object that he "perceived . . . to be the shotgun in question" over the fence. Although the defendant did not present extrinsic evidence to contradict Kunza, the defendant did challenge Kunza's testimony on cross-examination, and Kunza admitted that he did not see the object that the defendant had thrown over the fence. Moreover, although the victim linked the defendant to the gun, he did so somewhat equivocally, and at trial Marshall's credibility was impeached,[6] thereby magnifying the importance of the officer's testimony.

The police officers' testimony was crucial in establishing the state's case, and, in any event, the defendant had the right to attempt to ascertain whether a juror might be more, or less, inclined to credit their testimony solely because of their official status. "It was of vital importance to the defendant that if any such inclination existed it be brought to light. He was

---

[6] At trial, testimony was introduced that Marshall may have been under the influence of drugs or alcohol on the night in question.

entitled to explore this area of possible disqualification prior to the impaneling of the jury. Only then could he intelligently challenge for cause or exercise his right of peremptory challenge. *State* v. *Higgs,* supra, 144.

"Nothing could be plainer than that a predisposition to attach greater or less credence to a witness' testimony simply because of that witness' position as an officer is inconsistent with the defendant's constitutional and statutory right to an impartial jury. The denial of such a fundamental right cannot be countenanced. The trial court's refusal to allow defense counsel to ask prospective jurors whether they would be inclined to give more weight to the testimony of a police officer merely because of that person's official status constituted an abuse of discretion." *State* v. *Hill,* supra, 673; see also *State* v. *Rogers,* supra, 319. Accordingly, we find error and order a new trial.

Although our holding is dispositive of this appeal, we will consider certain of the defendant's other claims of error which are likely to arise upon retrial.

## II

The defendant next claims that the trial court erred in refusing to charge the jury on robbery in the second degree as a lesser included offense of robbery in the first degree.[7]

The law governing a defendant's right to a lesser included offense instruction is well settled. See, e.g., *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986); *State* v. *Castro,* 196 Conn. 421, 427–29, 493 A.2d

---

[7] The defendant also contends that the trial court erred in refusing to instruct the jury on the lesser offense of robbery in the third degree. Because we have found error on the defendant's first claim and have remanded this case for a new trial, we need not consider this claim, in that the propriety of such a charge will depend, in part, on the evidence adduced at the new trial.

223 (1985); *State* v. *Vass,* 191 Conn. 604, 616–17, 469 A.2d 767 (1983); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). In *State* v. *Whistnant,* supra, this court articulated a four-pronged test for determining the propriety of a lesser included offense charge. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

We conclude that the trial court did not err in refusing to instruct the jury on the lesser offense of robbery in the second degree because, in this case, the second prong of the *Whistnant* test has not been satisfied.

The indictment charging the defendant with the crime of robbery in the first degree stated that the defendant "did commit a robbery of Don Marshall, Jr., and, in the course of the commission of the crime or of the immediate flight therefrom, he was armed with a deadly weapon, to wit: a sawed-off shotgun, in violation of Section 53a-134 (a) (2) of the Connecticut General Statutes." There was no bill of particulars to elaborate on or make more specific the crime charged.[8]

Robbery in the second degree requires that "in the course of the commission of the crime [of robbery]

___

[8] Although the defendant filed a motion for a bill of particulars, that motion was subsequently withdrawn.

or of immediate flight therefrom, [the defendant] or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument." General Statutes § 53a-135 (a) (2).[9] Robbery in the first degree in violation of § 53a-134 (a) (2), however, requires that a person or another participant, in committing a robbery or in immediate flight therefrom, be armed with a deadly weapon. The defendant need not display the weapon nor threaten to use it to commit a robbery in the first degree. One merely has to be so armed. "An example which comes to mind would be the situation where the accused has a loaded gun in his pocket and commits a robbery without ever using or referring to the weapon. He would be armed but never have displayed or threatened the use of a weapon as required in the crime of robbery in the second degree." *State* v. *Anderson,* 178 Conn. 287, 294, 422 A.2d 323 (1979). Thus, it is possible to commit a robbery in the first degree, as set forth in this particular indictment, without having committed the lesser offense of robbery in the second degree. See id.; cf. *State* v. *King,* 6 Conn. App. 247, 252, 504 A.2d 560 (1986). Accordingly, under the particular indictment in this case, the crime of robbery in the second degree is not a lesser included offense, and the trial court did not err in refusing to give the requested instruction.

## III

The defendant also claims that the trial court erred in denying his motion to dismiss, his motion for acquittal and his motion in arrest of judgment on the charge

---

[9] "[General Statutes] Sec. 53a-135. ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

of being a persistent dangerous felony offender in violation of General Statutes § 53a-40. Specifically, the defendant argues that he cannot be a persistent dangerous felony offender because the prior offense for which he was convicted does not fall within the purview of § 53a-40. We disagree.

On August 12, 1981, the defendant was indicted by a grand jury in a two part indictment. Part B of the indictment[10] stated that on March 17, 1972, the defendant had been convicted of the crime of assault with intent to kill in violation of General Statutes § 54-117,[11] and sentenced to a term of imprisonment of more than one year. The indictment further stated that if convicted of the crime set forth in part A of the indictment, the defendant would be a persistent dangerous felony offender as defined in § 53a-40 (a).

Prior to trial, the defendant filed a motion to dismiss the charge of being a persistent dangerous fel-

---

[10] "INDICTMENT

"PART B

"And said Grand Jurors within and for the Judicial District of New Haven further accuse Herbert Dolphin, AKA Hurlbert Dolphin of being a Persistent Dangerous Felony Offender and charge that, in addition to the crime set forth in Part A of this Indictment, in the Superior Court at New Haven on the 17th day of March, 1972, the said Herbert Dolphin, AKA Hurlbert Dolphin was convicted of the crime of Assault with Intent to Kill in violation of Section 54-117 of the Connecticut General Statutes and was sentenced to an imposed term of imprisonment of more than one (1) year in State Prison.

"And so the Grand Jurors charge that if the said Herbert Dolphin, AKA Hurlbert Dolphin is convicted of the crime set forth in Part A of this Indictment, he is a Persistent Dangerous Felony Offender as defined in Section 53a-40 (a) of the Connecticut General Statutes.

"Dated at New Haven, August 12, 1981."

[11] "[General Statutes (Rev. to 1968)] Sec. 54-117. PENALTY FOR COMMON LAW HIGH CRIMES AND MISDEMEANORS. In case of conviction for any high crime or misdemeanor at common law, or of assault with intent to kill, the offender may be imprisoned not more than fifteen years or be fined not more than five hundred dollars or both, and, in case of conviction for any other offense at common law, the offender may be imprisoned not more than one year or be fined not more than three hundred dollars or both."

ony offender, which the court denied. After the jury returned a verdict of guilty on the first degree robbery charge, the defendant, again arguing that he could not be found to be a persistent dangerous felony offender, moved to dismiss part B of the indictment. Again, the trial court denied the defendant's motion. The defendant subsequently filed a motion for acquittal. Finally, during the sentencing proceedings, the defendant filed a motion in arrest of judgment, reasserting his position that he could not be found to be a persistent dangerous felony offender. The trial court then denied both the defendant's motion for acquittal and his motion in arrest of judgment. We find no error.

General Statutes § 53a-40 (a)[12] provides in relevant part that "[a] persistent dangerous felony offender is a person who (1) stands convicted of . . . robbery in the first or second degree . . . and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death . . . for any of the following crimes . . . prior to October 1, 1971, in this state, assault with intent to kill under section 54-117 . . . ."

The defendant argues that the plain meaning of this language "establishes a temporal limitation on the requirement of a conviction and imprisonment" for the crime of assault with intent to kill, and that a person must be convicted and imprisoned for that crime prior to October 1, 1971, for § 53a-40 (a) to apply. Although the defendant had committed the crime of assault with intent to kill in violation of General Statutes § 54-117 prior to October 1, 1971, he was not convicted of that crime until March 27, 1972, after the repeal of that statute. The defendant, therefore, contends that he cannot be found to be a persistent dangerous felony offender

---

[12] See footnote 2, supra.

under § 53a-40 (a). We find the defendant's interpretation of § 53a-40 unpersuasive.

In addressing the defendant's claim, we are guided by the well defined principles of statutory construction that require us to ascertain and give effect to the apparent intent of the legislature. *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. If the language of the statute is plain and unambiguous, we need look no further than to the words themselves, because we assume that the language expresses the intentions of the legislature. *State* v. *Blasko,* supra; *Rhodes* v. *Hartford,* supra; *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). If, however, the statute is ambiguous, we must ascertain the legislative intent by looking to the language of the statute, its legislative history and the purpose the statute is to serve. *State* v. *Blasko,* supra; *Rhodes* v. *Hartford,* supra; *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985).

The defendant contends that the plain language of § 53a-40 (a) demonstrates that the legislature intended that, to be considered a persistent dangerous felony offender, a person must be convicted of and imprisoned for, inter alia, assault with intent to kill prior to October 1, 1971. In his view, the language "prior to October 1, 1971," signifies that a person must be convicted and imprisoned before that date. An examination of § 53a-40 (a) reveals that the language is not as unambiguous as the defendant leads us to believe.

Section 53a-40 (a) requires that, as a predicate to being found guilty of being a persistent dangerous felony offender, a person, in addition to being convicted of the present offense, be convicted of and imprisoned for having previously committed certain enumerated crimes. The crimes listed are as follows: "(A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in Section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes . . . ." General Statutes § 53a-40 (a). We find it unclear from the language of the statute itself whether the legislature intended to limit persistent dangerous felony offenders to those persons who were convicted of and imprisoned for committing an assault with intent to kill prior to October 1, 1971, or whether the legislature was merely recognizing that on October 1, 1971, § 54-117 was repealed.

A review of the legislative debate concerning § 53a-40 (a) or the act's subsequent amendments fails to resolve this issue. A reading of the original act itself, however, does shed some light on the intent of the legislature. Number 828 of the 1969 Public Acts lists the prior crimes for which a person is a persistent dangerous felony offender to include *"prior to the effective date of this act,* in this state: Assault with intent to kill, under section [54-117]." (Emphasis added.) Public Acts 1969, No. 828, went on to repeal, effective October 1, 1971, General Statutes § 54-117. It is apparent

that the legislature was not "establish[ing] a temporal limitation on the requirement of a conviction and imprisonment" for the crime of assault with intent to kill, but merely recognizing that after the effective date of Public Acts 1969, No. 828, the existing statute setting forth the crime of assault with intent to kill was repealed.

Our conclusion comports with the purpose of the persistent dangerous felony offender statute. The Commission Comment on § 53a-40 states that "[t]his section creates a new scheme of sentencing relating to recidivists . . . . The purpose of the definition of persistent dangerous felony offender is to identify those persons who have shown themselves to be repeatedly physically dangerous to others. The essential elements of the definition of a persistent dangerous felony offenders are: (1) a present conviction of the dangerous felonies listed in subsection (a) (1); and (2) at least one prior dangerous felony conviction and imprisonment therefor for more than one year." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 14. In discussing General Statutes (1930 Rev.) § 6057, a predecessor of § 53a-40, this court stated that "[t]he purpose of such statutes is to remove from society persons whose criminal tendencies have not been cured by punishment and by the state's efforts to rehabilitate them." *State* v. *Mead,* 130 Conn. 106, 110, 32 A.2d 273 (1943). Thus, it is clear that the purpose of this statute is to provide increased punishment for those who have committed dangerous felonies and have been deemed to be dangerous to society, regardless of the date of conviction and imprisonment.

Notwithstanding, the defendant argues that because § 53a-40 is a penal statute we should construe the statute strictly and resolve any ambiguity in favor of lenity. Although we recognize the fundamental principle that criminal statutes are to be construed strictly, "it is equally fundamental that the rule of strict construc-

tion does not require an interpretation which frustrates an evident legislative intent. *State* v. *Belton,* 190 Conn. 496, 505–506, 461 A.2d 973 (1983); *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); *State* v. *Sober,* 166 Conn. 81, 91, 347 A.2d 61 (1974)." *State* v. *Ellis,* supra, 445; see also *State* v. *Golino,* 201 Conn. 435, 441, 518 A.2d 57 (1986). Moreover, there is a presumption that the legislature intends to accomplish a reasonable and rational result rather than a " 'difficult and possibly bizarre' " one. *State* v. *Blasko,* supra, 558; *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984). It would be anomalous to have one person found guilty of being a persistent dangerous felony offender because he committed the crime of assault with intent to kill, was convicted and imprisoned prior to October 1, 1971, while another person, who committed the same crime on the same day, not be considered a persistent dangerous felony offender because, by mere happenstance, he was not convicted and imprisoned until after October 1, 1971. Such a result would undermine the legislative intent of § 53a-40 and would frustrate the purpose of the persistent dangerous felony offender statute.

Accordingly, we conclude that the trial court did not err in denying the defendant's motions to dismiss, for acquittal and in arrest of judgment with respect to part B of the indictment charging him with being a persistent dangerous felony offender.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.