## STATE OF CONNECTICUT *v.* JACK SCUILLA
## (9697)

DUPONT, C. J., NORCOTT and HEIMAN, Js.

Argued October 1—decision released November 19, 1991

*Robert G. Golger,* special public defender, with whom, on the brief, was *Howard T. Owens, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Henry Lyons,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and using a motor vehicle without the owner's permission in violation of General Statutes § 53a-119b. The defendant claims that the trial court improperly (1) determined there was sufficient probable cause to put him on trial on a charge of murder, (2) admitted into evidence certain gruesome photographs of the victim, and (3) limited the scope of voir dire of prospective jurors, all of which prejudiced him. We affirm the trial court's judgment.

The jury reasonably could have found the following facts. Early on the morning of September 24, 1989, Alfred Allen got out of his car at Main and John Streets in Bridgeport to use a public telephone. While using the telephone, Allen, who had left the car running, saw someone get into the car and drive away. Allen gave chase but was unable to catch up to the car. After returning home, he and his wife, Audra, called police and resumed the search in her car. Near Hamilton Street and Martin Luther King Drive, they saw the defendant in the car talking with a man who was leaning into the car on the passenger side. The defendant then sped away with the victim hanging from the passenger compartment. Allen followed and saw the defendant swerve the car from side to side, apparently attempting to throw the victim off. Allen estimated that the defendant was traveling at a speed of sixty to sixty-five miles per hour while going onto an entrance ramp to Interstate 95.

While on the ramp, the defendant repeatedly swerved the car against the guardrail, shearing off the victim's legs, after which the victim fell from the car. Two other drivers who had been traveling on the highway that morning also testified that they saw the incident on the entrance ramp. Medical evidence showed that the vic-

tim died as a result of multiple blunt force injuries and that both his legs had been crushed or torn off. A small amount of cocaine was found in his system.

At trial, the defendant testified that the victim had precipitated the incident by leaning into the car and demanding money and drugs. He testified that the victim had a gun and was threatening to kill him while trying to get into the car. The defendant testified that he was in fear for his life and swerved the car to get the victim off of it. The defendant also testified that he had ingested alcohol and numerous drugs prior to the incident. Finally, a forensic psychiatrist testified that the defendant was intoxicated on the morning of the incident and that the amounts of drugs and alcohol he had ingested would have impaired his judgment and ability to think rationally.

Although the defendant was charged, in a substitute information in the first count, with murder, he was convicted of the lesser included offense of manslaughter in the first degree, as well as the motor vehicle offense. He was sentenced to a term of imprisonment of twenty years, suspended after twelve years.

Prior to trial, the court conducted a hearing in which it found sufficient probable cause to permit the defendant to be tried on the murder charge. At the hearing, the court refused to allow defense counsel to introduce medical testimony in an effort to negate probable cause through a showing that the defendant was intoxicated at the time of the crime and thus lacked the requisite intent to commit murder. During voir dire of prospective jurors, the court also limited defense counsel regarding questions concerned with narcotics and self-defense. At trial, despite defense counsel's repeated objections, the court admitted into evidence several photographs of the victim's body and severed legs that depicted his injuries in graphic detail, including one pic-

ture showing a gash that exposed the inside of his head and another showing the victim lying naked on an autopsy table. The jury also heard testimony from a deputy chief medical examiner for the state who graphically described the victim's injuries.

## I

The defendant first claims that the court improperly construed the purpose of our probable cause statute, General Statutes § 54-46a,[1] thereby denying him an opportunity to introduce medical testimony that would have led to a finding that no probable cause existed to try him for murder. He claims that the court wrongly concluded that rebuttal evidence could be used only to show that the defendant was not the person who committed the crime. As a result, he claims, the court improperly prohibited testimony by a forensic psychiatrist that would have shown the defendant lacked the capacity to form the intent to commit murder and the ability to appreciate the consequences of his actions.[2] The state argues that, even if the defendant is correct in his allegations, any error in the conduct of the hearing is harmless beyond a reasonable doubt because the defendant was acquitted of the murder charge, although he was found guilty of the lesser included offense of manslaughter in the first degree. We agree.

[1] General Statutes § 54-46a provides in pertinent part: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it."

[2] At the probable cause hearing, the court stated: "I can't lose sight of the purpose of this—the statute. The purpose of this statute is to protect those defendants against the possibility of the state going forward with a murder case without sufficient evidence. The purpose of allowing the defensive material, and the statute is quite clear on this, it should only be allowed if it is conclusive in the court's mind that it would negate any possibility that he could be the person who committed a crime."

Our disposition of this issue is governed by *State* v. *Timmons,* 7 Conn. App. 457, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987). In *Timmons,* we determined that deprivation of a defendant's constitutional right to a probable cause hearing was harmless beyond a reasonable doubt when the defendant was acquitted of murder but convicted of the lesser included offense of manslaughter in the first degree. Lack of probable cause "to charge the defendant with murder would not have precluded the state from proceeding to trial against the defendant on the lesser included offense of manslaughter in the first degree . . . . Charged only with manslaughter, the defendant would have had no right to a probable cause hearing . . . ." Id., 462. The defendant's claim here that he was prejudiced by the finding of probable cause for murder is thus without merit in light of the fact that the jury acquitted him of murder and found him guilty of the lesser included offense of manslaughter in the first degree. Although the defendant's counsel claimed at oral argument that, "had he not been charged with murder, he would have had a different trial" because different strategies, witnesses and trial tactics would have been employed, it is almost always the case when a lesser included offense is involved that counsel would have proceeded differently had the greater offense not been charged in the first place. The existence of this situation by itself does not mean that prejudice resulted which adversely affected the integrity of the trial.

Further, we disagree with the defendant's argument that the finding of probable cause to go forward on the murder charge meant the trial and subsequent proceedings were void ab initio. "For a criminal proceeding to be void ab initio, there must be some defect as to the court's jurisdiction over the subject matter or the person charged." Id. When the state charges a defendant with murder, it may prosecute him for manslaugh-

ter because the information serves to give him notice of all lesser included charges. Id. Here, the defendant, charged by substitute information with murder, had notice of all lesser included offenses, including manslaughter in the first degree, for which he was convicted. We conclude that any error in construing the purpose of our probable cause statute was harmless beyond a reasonable doubt.

## II

The defendant next claims that the trial court should not have admitted into evidence certain photographs of the victim because they were cumulative of prior oral testimony, as well as being grisly, inflammatory and highly prejudicial.

It is well established that where photographs have a reasonable tendency to prove or disprove a material element of a crime charged or shed light on a material inquiry, they are not inadmissible simply because they may be regarded as "gruesome." *State* v. *Haskins,* 188 Conn. 432, 452, 450 A.2d 828 (1982); *State* v. *Piskorski,* 177 Conn. 677, 700, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Suarez,* 23 Conn. App. 705, 711, 584 A.2d 1194 (1991). To the contrary, photographs are admissible where they have " 'a reasonable tendency to prove or disprove a material fact in issue . . . .' " *State* v. *Doehrer,* 200 Conn. 642, 649, 513 A.2d 58 (1986); *State* v. *DeJesus,* 194 Conn. 376, 381, 481 A.2d 1277 (1984); *State* v. *Lopez,* 14 Conn. App. 536, 540, 541 A.2d 902 (1988).

When the trial court determines that possibly gruesome photographs may have a tendency to prejudice or inflame the jury, the court must decide if their probative value outweighs their possibly prejudicial effect. *State v. Piskorski,* supra, 700–701; *State* v. *Smith,* 174 Conn. 118, 122, 384 A.2d 347 (1977). The test for deter-

mining the admissibility of potentially inflammatory evidence is not whether it is "absolutely essential to the state's case" but whether it is relevant. *State* v. *King,* 216 Conn. 585, 603, 583 A.2d 896 (1990); *State* v. *Piskorski,* supra, 701; *State* v. *Haskins,* supra, 453; *State* v. *Lopez,* supra. The trial court has broad discretion where evidence is challenged as inflammatory and highly prejudicial, and its finding that probative value outweighs prejudicial effect will not be disturbed on appeal unless there is a clear abuse of discretion. *State* v. *King,* supra; *State* v. *Piskorski,* supra; *State* v. *Smith,* supra, 122; *State* v. *Suarez,* supra. This is true even where the state presents other testimony or exhibits that could be seen as rendering such photographs unnecessary. *State* v. *Piskorski,* supra. Because the prosecution has the " 'burden of establishing guilt beyond a reasonable doubt, [it] is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce.' " Id., 701–702, quoting *State* v. *Jensen,* 209 Or. 239, 280, 296 P.2d 618, appeal dismissed, 352 U.S. 948, 77 S. Ct. 329, 1 L. Ed. 2d 241 (1956).

The photographs in this case were relevant to the issue of whether the defendant intended to kill the victim. Viewing the photographs, the jury could properly draw inferences to this effect in order to establish the requisite state of mind needed to convict the defendant of murder. Moreover, the photographs corroborated the testimony of Allen and the two witnesses who saw the incident while driving on the highway, as well as the medical examiner's explanation of the cause of death. We conclude the photographs were properly admitted.

III

Finally, the defendant claims that the trial court improperly restricted the scope of voir dire by limit-

ing counsel's questions pertaining to prospective jurors' feelings about narcotics and whether an individual has the right to use force in self-defense.

During voir dire, the defendant's counsel attempted to ask several prospective jurors if they personally believed they would have the right to use self-defense to protect themselves in any instance in which they felt threatened. Counsel also asked if they would give equal weight to the testimony of all witnesses, regardless of whether such witnesses have used narcotics, and whether this would prevent the prospective jurors from reaching a fair and just verdict. The state objected to these questions, and the court sustained the objections, asserting that defense counsel had injected collateral issues into the case. The court warned counsel to stay within the parameters of its rulings, stating, "We're trying to try a collateral issue and it's going to stop. . . . This man is charged with a homicide. Possession of a stolen car. We're not going to try the narcotics case in this case. . . . Generically, we'll treat the subject; but we're not getting into the evidence. . . . [T]hat isn't going to fly, and it won't be allowed again."

Our state constitution provides that in all civil and criminal actions tried before a jury, the parties shall have the right to challenge jurors peremptorily, with the number of such challenges to be established by law. Conn. const., art. I, § 19, as amended by art. IV of the amendments to the constitution. There also is a statutory right to a voir dire examination of each prospective juror in a criminal action. See General Statutes § 54-82f. It is settled law in Connecticut that "[t]he right to question each juror individually by counsel shall be inviolate." Conn. const., art. I, § 19, as amended by art. IV of the amendments to the constitution; see, e.g., *State* v. *Couture,* 218 Conn. 309, 318, 589 A.2d 343 (1991); *State* v. *Dolphin,* 203 Conn. 506, 511, 525 A.2d 509 (1987); *Lamb* v. *Burns,* 202 Conn. 158, 162, 520 A.2d

190 (1987); *State* v. *Hill,* 196 Conn. 667, 671–72, 495 A.2d 699 (1985); *State* v. *Barnes,* 16 Conn. App. 333, 338, 547 A.2d 584 (1988). Although the extent of the voir dire rests largely within the discretion of the trial court, and the exercise of such discretion will not constitute reversible error unless it clearly has been abused or harmful prejudice appears to have resulted; *State* v. *Couture,* supra; *State* v. *Dolphin,* supra, 512; *State* v. *Rogers,* 197 Conn. 314, 318, 497 A.2d 387 (1985); *State* v. *Haskins,* 188 Conn. 432, 447, 450 A.2d 828 (1982); *State* v. *Anthony,* 172 Conn. 172, 176–77, 374 A.2d 156 (1976); in exercising such discretion the court should grant such latitude as is reasonably necessary to accomplish the two-fold purpose of voir dire: to permit the trial court to determine whether a prospective juror is qualified to serve, and to aid the parties in exercising their right to peremptory challenges. *State* v. *Couture,* supra; *State* v. *Rogers,* supra; *State* v. *Haskins,* supra, 446. Therefore, " 'if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is particularly true with reference to the defendant in a criminal case.' *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152 (1956)." *State* v. *Rogers,* supra; *State* v. *Fritz,* 204 Conn. 156, 161, 527 A.2d 1157 (1987).

Although the defendant claims that the court so severely restricted the scope of questioning as to force him to go forward without having been able effectively to ferret out possible prejudices of the jury, our review of the record does not support such a view. Prospective jurors told counsel they would be able to evaluate witnesses' testimony fairly and objectively, and would follow the court's instructions in accordance with the law, despite any negative feelings they may have had about narcotics or self-defense. Although the court

limited inquiries in certain areas, we cannot say it did not allow counsel sufficient latitude to expose possible prejudices.

It is clear that the court acted within the bounds of its broad discretion in limiting voir dire for the purpose of preventing an inquisition into matters it believed were far afield of the relevant issues. We conclude that the court did not abuse its discretion in restricting the scope of defense counsel's voir dire.

The judgment is affirmed.

In this opinion the other judges concurred.