## STATE OF CONNECTICUT *v.* THOMAS TIMMONS
## (3078)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 5, 1985—decision released May 20, 1986

*Eugene J. Riccio,* public defender, for the appellant (defendant).

*Robert A. Lacobelle,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant was arrested on April 23, 1983, and charged with the murder of Robert L. Smith. Over the objection of the defendant, the state's attorney submitted the matter to a grand jury. On June 30, 1983, the grand jury returned a true bill of indictment against the defendant for murder, a violation of General Statutes § 53a-54a (a). The defendant was tried before a jury of twelve and convicted of the lesser included offense of manslaughter in the first degree, a violation of General Statutes § 53a-55 (a) (1). He was sentenced to a term of imprisonment for twenty years. The defendant has appealed from the judgment of conviction, claiming that the trial court erred: (1) in denying him his constitutional right to a probable cause hearing; (2) in its instructions to the jury on the issue of his flight; (3) in its instructions to the jury on certain inculpatory statements made by him while in police custody; and (4) in its instructions to the jury on the issue of self-defense. We find no error.

The following facts are not in dispute. In early morning, April 23, 1983, the defendant entered Jackson's Cafe in Bridgeport. Once inside, he encountered his ex-girlfriend, Vera Robinson, in the company of the victim, Robert L. Smith. Robinson had recently severed her relationship with the defendant. The defendant briefly confronted Smith before drawing a handgun and firing a shot toward him. A few seconds later, the defendant fired a second shot. The victim then fell to the floor. He died several hours later from a single gunshot wound. The defendant left the cafe immediately after the shooting and disposed of the handgun in a river. After hiding out for several days, he surrendered to the police.

The defendant was taken into custody and advised of his *Miranda* rights. See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant refused to waive these rights. While being

transported for arraignment, the defendant began to mumble to himself. One of the attending police officers asked him what he was saying. The defendant responded, "I didn't really mean to shoot him, it was an accident. I'm really sorry." While in the back seat of the police cruiser, the defendant continued to mumble to himself. He paused for a while and then said, "I only remember firing two shots, but the people there said there were four shots or more." At that point, the officer began questioning the defendant about the shooting.[1]

On June 30, 1983, prior to the submission of the matter to the grand jury, the defendant's counsel requested that the defendant be granted a probable cause hearing. This motion was denied and the defendant's exception was noted. On the same day, the grand jury returned a true bill of indictment for murder, a violation of General Statutes § 53a-54a (a).

After the close of the evidence at trial, the defendant submitted a request to charge the jury on the issue of the defendant's flight following the shooting. This request stated that evidence of the defendant's flight "does not raise a presumption of the defendant's guilt and by itself is but scant or weak evidence of his guilt." As to the issue of the defendant's incriminatory statements, the defendant requested that the jury be instructed that such statements alone are insufficient to prove that the defendant committed the crime charged. They must be substantially corroborated by other material and substantial evidence that the crime charged was committed by someone. The defendant also requested that the jury be instructed on the issue of self-defense to the effect that an attempt to draw

[1] The trial court suppressed all conversation between the defendant and the police from the moment the officer began questioning the defendant about the events surrounding the shooting. The propriety of the trial court's ruling is not at issue in this appeal.

a gun serves as a sufficient appearance of necessity to justify the use of deadly physical force in self-defense. The requested instruction stated, in part, "one knowing his life to be threatened, and believing himself to be in danger of death or great bodily harm, need not remain at home to avoid assault, but may arm himself sufficiently to repel anticipated attack and pursue his legitimate avocation; and if, without fault, he is compelled to take life to save himself, the homicide is justifiable." The trial court's instructions on these issues did not follow the requested language, but did incorporate some, however not all, of the elements of the defendant's requests to charge.

The trial court charged the jury on the elements of murder and of the lesser included offenses of manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide. The jury acquitted the defendant of the murder charge but found him guilty of committing manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).

The defendant's first claim on appeal alleges that he was denied his constitutional right to a probable cause hearing, as guaranteed by the constitution of Connecticut, amendment seventeen, adopted on November 24, 1982. The state concedes that the defendant was denied his constitutional right to a probable cause hearing, but maintains that the trial court's denial of this right was harmless beyond a reasonable doubt because the defendant was acquitted of the murder charge when he was convicted of the lesser included charge of manslaughter in the first degree. We agree.

Article first, § 8, of the constitution of Connecticut was modified by amendment seventeen on November 24, 1982, to provide: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a

hearing in accordance with procedures prescribed by law . . . . " The enabling legislation enacted to implement this constitutional change, General Statutes § 54-46a (a), provides in pertinent part: "No person charged by the state on or after May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it." It is apparent from the record here that the trial court denied the defendant's motion for a probable cause hearing because he was "charged" with murder prior to the statutory date, May 26, 1983. The court concluded, therefore, that the defendant had no right to a probable cause hearing under the provisions of General Statutes § 54-46a (a).

Subsequent to the trial court's ruling on the defendant's motion for a probable cause hearing, our Supreme Court struck down as unconstitutional that portion of General Statutes § 54-46a (a) which limited the constitutional right to a probable cause hearing to those persons " 'charged by the state' on or after May 26, 1983." *State* v. *Sanabria,* 192 Conn. 671, 699, 474 A.2d 760 (1984). The remainder of the act, however, was held to be valid. Id. The court held that "on May 26, 1983, the effective date of [General Statutes § 54-46a], *all* persons then being held for crimes punishable by death or life imprisonment, who had not yet been indicted by grand jury became entitled to a probable cause hearing before their cases went to trial, regardless of the dates on which they were arrested or charged by information." (Emphasis in original.) Id.

It is undisputed that on May 26, 1983, the defendant was being held for the grand jury on a charge punishable by life imprisonment. It is equally clear, in light of the holding in *State* v. *Sanabria,* supra, that

the defendant was denied his recently established constitutional right to a probable cause hearing. Recognition of this acknowledged error, however, does not end our inquiry. The state argues that the error, admittedly of a constitutional nature, was harmless beyond a reasonable doubt. See *State* v. *Cohane,* 193 Conn. 474, 484–85, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).

In determining whether the deprivation of the defendant's constitutional right to a probable cause hearing was harmless beyond a reasonable doubt, we must weigh the effect of an assumed finding of no probable cause at a properly conducted hearing upon the prosecution and defense in this case. Such a lack of probable cause to charge the defendant with murder would not have precluded the state from proceeding to trial against the defendant on the lesser included offense of manslaughter in the first degree upon information. See General Statutes (Rev. to 1983) § 54-46. Charged only with manslaughter, the defendant would have had no right to a probable cause hearing or any of the rights ancillary thereto.[2]

We disagree with the defendant's contention that the lack of a probable cause hearing rendered the subsequent criminal proceedings void ab initio. For a criminal proceeding to be void ab initio, there must be some defect as to the court's jurisdiction over the subject matter or the person charged. See generally Spinella, Connecticut Criminal Procedure, pp. 4–8. It is evident that the trial court lacked jurisdiction over the subject matter of the murder charge because of the constitutional prohibition against trying a person for such a crime

---

[2] Because we hold that the trial court's denial of the defendant's right to a probable cause hearing was harmless error, we likewise dismiss his claim that such deprivation violated his right to effective assistance of counsel at a probable cause hearing, a claim raised for the first time on this appeal.

without granting him a prior probable cause hearing. It is equally clear, however, that the court had proper jurisdiction over the charge of manslaughter in the first degree. The state was entitled to prosecute the defendant for manslaughter solely on the basis of the original information charging murder filed prior to his arraignment upon his arrest on a warrant that issued after a magisterial finding of probable cause. While the information specifically charged the defendant with murder, it served also to give him notice of all lesser included charges, such as manslaughter in the first degree of which he was ultimately convicted. Jurisdiction of his person was properly obtained, and retained for his trial and conviction on the charge of manslaughter in the first degree.

The defendant's remaining claims of error concern the trial court's charge to the jury. The defendant challenges the instructions concerning the defendant's flight from the scene, his alleged self-defense and his incriminatory statements made to the police.

Before we address each of these claims, we reaffirm those settled guidelines for reviewing a trial court's refusal to grant a request to charge. " 'When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the exception.' *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). 'The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the

evidence, and when its instructions are suited to their guidance in the determination of those issues.' *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978)." *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986). The charge must be reviewed from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Fuller,* 199 Conn. 273, 279, 506 A.2d 556 (1986).

The defendant requested that the jury be instructed that while the unexplained flight by the accused, in conjunction with the other facts of the case, may justify an inference of guilt, it does not raise a presumption of guilt and is by itself but scant or weak evidence of guilt. Supplementary to that request, he also asked that the jury be instructed that they could infer his innocence from his voluntary surrender to the police, along with the other facts of the case. The trial court charged the jury that flight was a form of circumstantial evidence which, when considered together with all the facts and circumstances of the case, may justify an inference of the accused's guilt. This instruction was a proper statement of the relevant law on flight sufficient to guide the jury in its evaluation of the defendant's guilt or innocence of any charge. The court did not charge, as requested by the defendant, on this issue in the negative, namely, that flight "does not raise a presumption of the defendant's guilt." While that would have been a correct supplementary statement of the law, the court's failure to instruct the jury so did not make its charge deficient. The positive statement of a permissible inference of guilt is a sufficient explanation of the law without an express negative exclusion of a contradictory presumption of guilt. In view of the adequacy of its charge, the court did not have to caution the jury against finding a presumption of guilt from the defendant's flight. The requested instruction was an accurate

restatement of the law. There was no reason for the jury to consider that such a presumption was warranted.

The court also refused to charge that evidence of flight "is but scant or weak evidence of [the defendant's] guilt." Such a request was improper. It was not a statement of a proposition of law applicable to the facts of the case. The request was not "a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply." Practice Book § 852. It is not error to refuse a charge which is contrary to the law. *Slicer* v. *Quigley,* 180 Conn. 252, 258, 429 A.2d 855 (1980). This requested charge was argumentative in nature and not an instruction of applicable law. The court properly charged the jury that the weight to be given to the evidence "is uniquely your function to determine."

The defendant's next and final claim of error respecting his request to charge on the issue of the defendant's flight is that the trial court erred in refusing to give this instruction: "Conversely, in this case you have evidence before you that Mr. Timmons voluntarily surrendered to the police. Should you so find this to be a fact, you may, in conjunction with the facts of the case, infer that the defendant is innocent of this offense." Again, the defendant failed to cite authority for this request. See Practice Book § 852. *State* v. *Corchado,* 188 Conn. 653, 453 A.2d 427 (1982), cited by the defendant is not supportive of his request. In *Corchado,* the trial court refused to charge that "surrender implies innocence and that a Defendant who surrenders is telling the truth." Id., 670. The defendant in that appeal claimed that the failure to give this instruction violated his due process right to a fair trial and to equal protection of the laws. As noted by the Supreme Court, he cited no authority for this in his request. See Prac-

tice Book § 852. Since this claim, even though constitutional in nature, had not been raised at trial, the court refused to address the issue. *State* v. *Corchado,* supra, 670–71. The surrender of an accused is a factual argument that may properly be made to a jury in summation of the evidence. It is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury. This court has been unable to find any authority allowing an instruction permitting the jury to infer innocence from surrender after flight.

The defendant's next claim of error arises from the court's instructions concerning certain alleged incriminatory or inculpatory statements made by the defendant after he refused to waive his *Miranda* rights. These statements were made to the police at a later date while in their custody. Testimony was elicited that these statements were spontaneous and not in response to any questioning. The defendant claimed on cross-examination that the officers had elicited the statements on interrogation. The defendant was quoted as stating that the shooting was an accident and that he recalled firing only two shots, but was told that four shots were fired. The defendant claims that the court erred in failing to instruct the jury on the voluntariness of these statements. The defendant had filed a request to charge concerning the voluntariness of his admission to the police. The court instructed the jury instead that "[t]hese statements were admitted not for showing that what was stated was true, but for you to consider what effect, if any, they had in your evaluation of the in-court testimony of a witness." In essence, the court charged that the statements were not to be considered for the purpose of incrimination, as the defendant posits they were, but only for the purpose of possible impeachment of the defendant's court testimony.

In the absence of the jury, the trial court heard evidence and determined the admissibility of the defendant's oral statements to the police. The court specifically found that "none of the statements were involuntary," and ruled that the state would be allowed to impeach the defendant's trial testimony, even with some of the statements that the court had previously suppressed. Although an exception was taken, the defendant does not contest the propriety of this ruling. The statements of the defendant were not submitted to the jury during the state's case-in-chief. Their use was restricted to impeach the testimony of the defendant in the state's rebuttal to the defense.

The trial court's charge was correct and substantially embraced the material requested by the defendant. The court, however, properly refused the defendant's instruction that the jury "may consider the circumstances under which the statement was given, particularly any duress or strain the defendant was under, or any coercion, physical or psychological, employed by the police." There was no evidence before the jury relating to the use of coercion by the police in obtaining the defendant's statements, or exhibiting any duress or strain by the defendant compelling their utterance. The defendant's request to charge on this aspect concerning his utterances to the police was not adapted to the evidence and issues before the jury and was, therefore, properly refused. To be acceptable, a request to charge must be relevant to the evidence and issues presented in court. *State* v. *Falcone,* 191 Conn. 12, 26, 463 A.2d 558 (1983); *State* v. *Maturo,* 188 Conn. 591, 600, 452 A.2d 642 (1982). "A court does not err in declining to charge the jury on an issue not supported by the evidence, particularly where such charge might unfairly influence the jury." *Bonner* v. *Winter,* 175 Conn. 41, 47, 392 A.2d 436 (1978). The trial court's charge relating to the use of the defendant's statements

for impeachment purposes was correct in law, adapted to the issues and sufficient for the guidance of the jury. See *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977).

The defendant's final claim alleges that the trial court erred in its instruction on the issue of self-defense. The defendant claims that the jury should have been instructed that an attempt by the victim "to draw a gun furnishes a sufficient appearance of necessity" to justify self-defense. He also asserts that the jury should have been instructed that a person fearful for his life "may arm himself sufficiently to repel anticipated attack and pursue his legitimate avocation; and if, without fault, he is compelled to take life to save himself, the homicide is justifiable."

The trial court began its instruction on self-defense by reciting in pertinent part General Statutes § 53a-19. The trial court informed the jury that the defendant would be justified in using reasonable force upon another person to defend himself from what he "really"[3] believes to be the use or imminent use of physical force. The court stated further that the issue of whether the victim was about to use physical force against the defendant was not to be determined from what the actual danger was, but whether the defendant reasonably believed under the circumstances that the victim was about to use physical force. The court further explained that it was not necessary for the victim actually to have struck a blow if it reasonably

---

[3] The transcript reflects that the judge used the phrase "to defend himself from what he *really* believes to be the use or imminent use of physical force." (Emphasis added.) The statute and correct statement of law allow self-defense "from what he *reasonably* believes to be the use or imminent use of physical force." (Emphasis added.) There was no exception taken to this statement. We cannot tell if this error arose from a misstatement, misunderstanding or mistranscription. In any event, upon the jury's later request for "the official definition of self-defense," the court corrected any possible error in this instruction by using the correct phraseology.

appeared to the defendant that an attack was imminent. This instruction sufficiently encompassed the defendant's request concerning any attempt by the victim to pull a weapon against the defendant. It is irrelevant that the court chose not to use the precise wording or language which the defendant requested if " 'the charge properly covered the substance of the written request.' " *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980).

In connection with the issue of self-defense, the state and the defendant are diametrically opposed as to the right of the defendant to carry a pistol. The defendant was a convicted felon and by General Statutes § 29-29 was prohibited from obtaining a permit to carry a pistol or revolver. The issue in self-defense is not whether a defendant has a right to carry a weapon, but whether, as in this case, the defendant reasonably believed that the use of deadly physical force was necessary to defend against one using or about to use deadly physical force. General Statutes § 53a-19 (a).

The defendant also requested a charge that the animosity between the defendant and the victim did not require the victim to alter his legitimate activities. The trial court instructed the jury on this issue as follows: "It is not necessary that the defendant be without fault or blame in this incident for him to avail himself [of] the doctrine of self-defense. . . . [T]he fact that a person has invited the discussion of assault as to which animosity existed between the parties that he has demanded an explanation of offensive words or conduct or the settlement of a claim or that a person has insulted another or even that he was the first to strike a blow does not by itself make him the aggressor. Acts that merely afford an opportunity for conflict or that do not proximately contribute to the conflict do not constitute a party [an] aggressor. Before one can be said

to have invoked an attack or conflict within the rule which precludes the provoked act or conflict as self-defense as an excuse or justification, he must willingly and knowingly do some act after meeting his antagonist, reasonably calculated to lead to a fracas or deadly conflict." Although not artfully stated, the charge is correct in content and in substance. This instruction sufficiently covered the defendant's request concerning the preexisting animosity between the defendant and the victim, and its relationship to the claim of self-defense.

Our review of the trial court's instruction to the jury indicates that the charge as a whole fairly presented the case to the jury so that no injustice was done to the legal rights of the defendant. *State* v. *Harrell,* supra, 271.

There is no error.

In this opinion the other judges concurred.