******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* ANTOINE GREENE
## (AC 39995)

DiPentima, C. J., and Moll and Bishop, Js.

*Syllabus*

Convicted of the crime of manslaughter in the first degree, the defendant appealed to this court. The defendant originally was charged with the crime of murder in connection with the death of the victim. Following a hearing on probable cause, the trial court concluded that the state had failed to establish that the defendant intentionally killed the victim and, therefore, found a lack of probable cause on the charge of murder, and the state filed an amended information charging the defendant with manslaughter in the first degree. The defendant filed a motion to dismiss the amended information, which the trial court denied. Following a trial to the jury, the defendant twice moved for a judgment of acquittal, which the court denied, and the jury found the defendant guilty of manslaughter in the first degree. Thereafter, the defendant filed a motion for a new trial, which the court denied, and the defendant appealed to this court. *Held:*

1. Contrary to the defendant's claim, the trial court's finding of a lack of probable cause on the murder charge did not deprive it of jurisdiction over the defendant with respect to the subsequent manslaughter charge in the amended information; although that court initially found that the state had not established probable cause for murder and the court did not make an express finding at the probable cause hearing of probable cause for the manslaughter charge, it could reasonably be inferred from the court's comments that it implicitly found that the state had established probable cause for manslaughter, as the court, at the probable cause hearing, inquired into whether the state intended to file an amended information and declined the defendant's request that his bail be substantially lowered, and the court subsequently made its finding of probable cause for manslaughter explicit while ruling on the defendant's motion to dismiss when it clarified that, as a result of the hearing on probable cause, it had found probable cause for the state to prosecute the defendant for the offense of manslaughter.

2. The defendant could not prevail on his claim that the evidence was insufficient to support a finding of probable cause that he was guilty of manslaughter in the first degree, which was based on his claim that the evidence presented at the probable cause hearing concerning the nature of the victim's injuries pointed only to an intent to kill and not merely an intent to cause serious physical injury: the trial court's initial finding of no probable cause for the specific intent to cause death did not preclude it from finding probable cause for the intent required for manslaughter, namely, to cause serious physical injury, and the facts in the record, which showed that the victim sustained sharp force injuries to his neck, that the defendant and the victim were alone in an apartment at the time of the victim's death, that there was no way for intruders to enter the apartment undetected because the entrances to the apartment were blocked, that DNA evidence linked the victim and the defendant to a knife found in the apartment, and that there were no weapons found near the victim's body or even in the same room as the victim, which effectively ruled out suicide, were sufficient to establish probable cause beyond mere suspicion that the defendant was the perpetrator and that he intended to cause, at the very least, serious physical injury to the victim; accordingly, the trial court properly determined that there was sufficient probable cause to continue with the manslaughter charge.

3. The evidence was sufficient to sustain the defendant's conviction of manslaughter in the first degree, there having been sufficient evidence from which the jury reasonably could have inferred that the defendant intended to cause serious physical injury to the victim; the evidence presented at trial established that only the defendant and the victim were at the apartment at the time of the victim's death, the circumstances of the victim's death made it clear that the victim did not take his own life, DNA evidence linked the victim and the defendant to a knife

recovered from the apartment, and the nature of the victim's wounds supported the finding that an individual acted with the intent to cause, at the very least, serious physical injury to the victim.

4. The defendant's claim that the trial court abused its discretion by denying his motion for a new trial was unavailing, there having been sufficient evidence for the jury reasonably to have found the defendant guilty of manslaughter in the first degree.

Argued October 15—officially released December 11, 2018

*Procedural History*

Substitute information charging the defendant with the crime of manslaughter in the first degree, brought to the Superior Court in the judicial district of New Britain, where the court, *Alander, J.*, denied the defendant's motion to dismiss; thereafter, the matter was tried to the jury before *Keegan, J.*; subsequently, the court, *Keegan, J.*, denied the defendant's motions for judgment of acquittal; verdict of guilty; thereafter the court, *Keegan, J.*, denied the defendant's motion for a new trial and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Matthew D. Dyer*, with whom was *Kristen Mostowy*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Paul N. Rotiroti*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Antoine Greene, appeals from the judgment of conviction, rendered after a jury trial, of one count of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] The defendant claims that the trial court erred by (1) denying his motion to dismiss after the court's finding of no probable cause for the state's initial charge of murder in violation of General Statutes § 53a-54a,[2] and (2) denying his motions for a judgment of acquittal and for a new trial on the basis that the evidence was insufficient to support a finding that he intended to cause serious physical injury to the victim.[3] We affirm the judgment of conviction.

The following procedural history and facts, including what the jury reasonably could have found from the evidence adduced at trial, are relevant to our consideration of the issues at hand. On March 21, 2015, the defendant was living with his mother, Jackie Greene, and the victim, William Greene, who was his father, in New Britain in the first floor apartment of a three-family house. The defendant's mother departed the home some time prior to 6 a.m., leaving the victim sleeping in the bedroom and the defendant awake in the living room. At approximately 8:11 a.m., New Britain police received an emergency call from the defendant stating that the victim was lying on the floor not breathing and that there was blood all over the carpet. At 8:13 a.m., New Britain police arrived at the apartment, followed shortly thereafter by emergency medical personnel.

When the police arrived they noticed a German shepherd on the back porch that they asked the defendant to restrain. The defendant reported that he and the victim were the only occupants in the apartment. Upon entering the apartment, the police found the victim lying face down on the living room floor in a pool of blood. The police did not locate any signs of forced entry. After securing the apartment, police allowed medical personnel to enter and tend to the victim. In the course of rendering medical assistance, the medical personnel turned over the victim's body and observed blood steaming from where the body had been lying, which indicated to the medical personnel that the victim's injuries were recent. On further examination, the medical personnel noticed an approximately six inch wound to the victim's neck. Detecting no pulse, the medical personnel presumed the victim's time of death to be approximately 8:27 a.m. While the medical personnel were tending to the victim, the police took multiple photographs and gathered evidence, which included seizing several knives from the kitchen.

While being questioned at the scene, the defendant indicated that he had not heard anyone in the apartment between the time of his mother's departure and his

discovery of the victim lying on the living room floor. The police did not observe any blood on the defendant or his clothing. They described the defendant's demeanor as calm and not upset. The defendant agreed to accompany police back to the New Britain Police Department, where he was interviewed for several hours and given the opportunity to speak with his mother and his uncle, Scott Davis.

The medical examiner who conducted an autopsy on the victim on March 22, 2015, noted cutting injuries to the victim's neck, as well as a cut to his left thumb. He opined that the injuries were consistent with having been inflicted by sharp force. The examiner testified that the victim's sharp force injuries were consistent with injuries caused by a knife. The examiner determined, as well, that the victim's right neck sharp force injury had severed the victim's carotid artery. He described the wound to the right side of the neck as a cut, due to the fact that the injury length on the skin exceeded the depth into the skin. The left side neck injury was a separate two inch cut. Finally, the medical examiner testified that the injury to the thumb was consistent with a defensive wound.

After the defendant's arrest on March 22, 2015, the state charged the defendant, by way of information filed on March 23, 2015, with murder in violation of § 53a-54a. Pursuant to General Statutes § 54-46a,[4] a probable cause hearing for the murder charge was held on June 8, June 9, and July 14, 2015. During the court's oral ruling on probable cause for the murder charge on July 21, 2015, the court, *Alander*, *J.*, indicated that it found incriminating the fact that the defendant and the victim were alone in the house at the time of the victim's death, that there were no signs of forced entry or any entry by a third party, that the front door was blocked and the back door was locked and guarded by a dog, that there were no weapons found near the victim or in the room where the victim was found, that the victim had not been deceased for very long when police and medical personnel arrived, that the victim had defensive wounds, and that DNA testing could not eliminate the victim as a contributor to blood found on a steak knife retrieved from the kitchen. The court found several facts to be exculpatory, including the fact that there was no blood observed on the defendant's body, hands, or clothes, that there were no signs of a struggle in the home, and that, because medical personnel opined that the victim was dead for less than one-half hour prior to being declared dead at 8:27 a.m. and the defendant's 911 call was at 8:11 a.m., this timeline gave the defendant very little time to change his clothes, wash his hands and body, clean the knife, and remove the knife from the scene before calling the police.

The court discounted testimony from Agustin Morales-Rojas, who testified that, while he and the

defendant were incarcerated together, the defendant had told him that he had killed the victim. Additionally, the court did not credit the testimony of the defendant's uncle that the defendant had been under the influence of drugs on the day of the homicide. On the basis of the evidence adduced at the probable cause hearing, the court found that the state had failed to establish that the defendant intentionally killed the victim and, thus, concluded that the state had not established probable cause to charge the defendant with murder. Following the court's decision, the state, that same day and pursuant to Practice Book § 36-17, moved to file an amended information charging the defendant with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).

On August 18, 2015, the defendant filed a pretrial motion to dismiss the substitute information pursuant to General Statutes § 54-56[5] and Practice Book § 41-8 (1), (2), (4), and (5).[6] The defendant claimed that the court lacked jurisdiction over him in the absence of a new warrant premised on a finding of probable cause by an independent magistrate. The defendant argued, as well, that there was insufficient evidence for substituting a charge of manslaughter for murder. The court, *Alander*, *J.*, denied the motion to dismiss on March 11, 2016. In doing so, the court clarified its earlier ruling on probable cause for the murder charge, stating that it did not find that there was insufficient evidence to establish probable cause that the defendant was the perpetrator of a crime. Rather, looking to the evidence before it, as well as DNA evidence linking both the victim and the defendant to a knife, the court stated that it had found that the state had established probable cause to charge the defendant with manslaughter.

During the defendant's jury trial on the manslaughter charge in March and April, 2016, the state presented evidence that several knives seized from the kitchen of the apartment were examined by the state forensic laboratory for possible biological evidence. One steak-type knife with a serrated cutting edge and a wooden handle tested positive for the presence of biological material in two areas. The biological material was tested to determine its source by DNA analysis, and the result was then compared to DNA samples obtained from both the victim and the defendant using standard DNA typing procedures. The material found on the blade of the knife was consistent with the DNA of the victim, and the material found on the handle of the knife was a mixture of DNA from which neither the defendant nor the victim could be eliminated as contributors.

At the close of the state's case-in-chief, and again at the close of the defendant's case-in-chief, the defendant moved orally for a judgment of acquittal. Both motions were heard and denied by the court, *Keegan*, *J*. On April 7, 2016, a jury found the defendant guilty of manslaugh-

ter in the first degree in violation of § 53a-55 (a) (1). The defendant subsequently filed a motion for a new trial, dated April 11, 2016, which the court denied on June 2, 2016. This appeal followed.

I

We turn first to the defendant's claims that the court erred in denying his motion to dismiss because (1) the court's initial finding of no probable cause for murder deprived the court of jurisdiction over him for both the murder and the subsequent manslaughter charges, and (2) there was insufficient evidence of probable cause for the state to continue its prosecution of the manslaughter charge. We disagree.

A

The defendant's claim that the court lacked jurisdiction over him for the manslaughter charge after having found no probable cause for the murder charge is not legally correct. This court has held that a trial court's finding of "a lack of probable cause to charge the defendant with murder [does not preclude] the state from proceeding to trial against the defendant on the lesser included offense of manslaughter in the first degree upon information." *State* v. *Timmons*, 7 Conn. App. 457, 462, 509 A.2d 64 (1986), appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987). In *Timmons*, this court determined that the state had not established probable cause for murder because the defendant had been deprived of his constitutional right to a probable cause hearing. See id., 461–62. This court held, "however, that the [trial] court had proper jurisdiction over the charge of manslaughter in the first degree. The state was entitled to prosecute the defendant for manslaughter solely on the basis of the original information charging murder filed prior to his arraignment upon his arrest on a warrant that issued after a magisterial finding of probable cause. While the information specifically charged the defendant with murder, it served also to give him notice of all lesser included charges, such as manslaughter in the first degree of which he was ultimately convicted. Jurisdiction of his person was properly obtained, and retained for his trial and conviction on the charge of manslaughter in the first degree." Id., 463.

Similarly, in the case at hand, although the court initially found that the state had not established probable cause for murder, the court implicitly found that the state had established probable cause for manslaughter. Although the court did not make an express finding that the evidence presented at the probable cause hearing established probable cause that the defendant had committed the offense of manslaughter, that finding reasonably can be inferred from the court's comments.[7] In conjunction with issuing its ruling on probable cause, the court inquired into whether the state intended to file an amended information and declined the defendant's

request that his bail be substantially lowered.[8] Additionally, the court later made its finding of probable cause for manslaughter explicit while ruling on the defendant's motion to dismiss.

The state, therefore, was entitled to prosecute the defendant for manslaughter on the basis of an amended information filed at the conclusion of the hearing on probable cause. See id. Practice Book § 36-17 provides in relevant part that "[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information . . . ." Additionally, "[b]efore the commencement of trial, a prosecutor has broad authority to amend an information . . . ." *State* v. *Ayala*, 324 Conn. 571, 585, 153 A.3d 588 (2017). As noted, the court clarified that as a result of the hearing on probable cause, it had found probable cause for the state to prosecute the defendant for the offense of manslaughter. Accordingly, the court's initial determination of no probable cause for the murder charge did not preclude it from considering the subsequent manslaughter charge set forth in the state's amended information filed after the probable cause hearing.

B

The defendant claims, as well, that the circumstantial evidence presented at the probable cause hearing concerning the nature of the victim's physical injuries points only to an intent to kill and not merely an intent to cause serious physical injury. Thus, the defendant asserts that the court should have granted his motion to dismiss because there had been insufficient evidence that he had intended only to cause serious physical injury. We are unpersuaded.

"When assessing whether the state has sufficient evidence to show probable cause to support continuing prosecution [following a motion to dismiss under § 54-56], the court must view the proffered proof, and draw reasonable inferences from that proof, in the light most favorable to the state." (Internal quotation marks omitted.) *State* v. *Pelella*, 327 Conn. 1, 19, 170 A.3d 647 (2017). Furthermore, "[i]n making a finding of probable cause, the trial court must determine whether the evidence offered would warrant a person of reasonable caution to believe that the accused had committed the charged offense. . . . The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. Our cases have made clear [t]hat there is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." (Internal quotation marks omitted.) *State* v. *Guess*, 44 Conn. App. 790, 794, 692 A.2d 849 (1997), aff'd, 244 Conn. 761, 715 A.2d 643 (1998).

It is important to note that the intent to cause death and the intent to cause serious physical injury are not mutually exclusive as a matter of law. See *State* v. *Williams*, 237 Conn. 748, 753, 679 A.2d 920 (1996). In *Williams*, although the court acknowledged that attempted murder and assault in the first degree each "require the same mental state, namely, a specific intent . . . the particular intents required to [commit either offense] are not the same. For each intent, a distinct conscious objective is sought. A verdict of guilty of attempted murder requires a finding of the specific intent to cause death. . . . A verdict of guilty of assault in the first degree . . . in contrast, requires a finding of the specific intent to cause serious physical injury. . . . We can perceive no logical reason to preclude, as a matter of law, the simultaneous possession of these intents by a defendant toward the same victim. . . . A defendant can intend both to cause the victim a serious physical injury and to kill the victim. No temporal separation is required for the intent, but obviously one is required for the result." (Citations omitted; internal quotation marks omitted.) Id., 754–55.

As in *State* v. *Timmons*, supra, 7 Conn. App. 462, the trial court's initial finding of no probable cause for the specific intent to cause death in the present case did not preclude it from finding probable cause for the similar, yet separate, intent required for manslaughter in the first degree. Thus, the court was free to make a separate determination of probable cause for manslaughter.

The defendant nonetheless argues that the injuries sustained by the victim, namely, the sharp force injuries, "substantial enough to sever the trachea and both carotid arteries without anything more can only indicate intent to kill" and, thus, no reasonable fact finder could find that the defendant had only the intent to cause serious physical injury. (Emphasis omitted.) As we have indicated, however, the absence of proof of an intent to kill does not preclude, as a matter of law, the finding of an intent to cause serious physical injury. In support of his argument, the defendant relies on our Supreme Court's decision in *State* v. *Rasmussen*, 225 Conn. 55, 72, 621 A.2d 728 (1993), in which the court determined that "the cumulative effect of the evidence in the record compelled the jury . . . to find that [the defendant] had intended to kill his wife." Specifically, the court stated that "[i]t requires nothing more than common sense to conclude that slashes to the neck of a conscious victim that severed the victim's jugular vein, trachea, larynx and esophagus and the impalement of the victim by a spear are evidence of an intent to kill rather than mere recklessness or intent to injure seriously." Id. In *Rasmussen*, the defendant argued that he should have been charged on the lesser included charge of manslaughter, as opposed to murder. See id., 68. The

court, however, found that neither the state nor the defendant had introduced sufficient evidence to justify a finding of guilt of the lesser included offense.[9] Id., 72–73.

The case before us is not controlled by *Rasmussen*. Unlike in *Rasmussen*, where the defendant argued that the evidence presented entitled him to a lesser included charge of manslaughter, the defendant in the present case argues that a lack of evidence of an intent to murder precludes a subsequent charge of manslaughter in light of the victim's injuries. Also, in ruling on the defendant's motion to dismiss in the present case, the court indicated that it had found sufficient evidence establishing probable cause that the defendant was the perpetrator of the crime notwithstanding the severe nature of the injuries sustained by the victim. The court considered the facts that no one else was in the apartment during the time between when the defendant's mother departed and the victim's death, there was no way for intruders to enter the apartment undetected because the front door of the apartment was blocked and the back door was locked and guarded by a dog, there was DNA evidence linking the victim and the defendant to a knife, and there were no weapons found near the victim's body or even in the same room as the victim, thus, effectively ruling out suicide. These findings are supported by the record and, taken together, are more than enough to establish probable cause beyond mere suspicion that the defendant was the perpetrator and that he had intended to cause serious physical injury to the victim. See *State* v. *Guess*, supra, 44 Conn. App. 794. Accordingly, we conclude that the court properly determined that there was sufficient probable cause to continue with the manslaughter charge.

## II

We next turn to the defendant's claims that the trial court erred in denying his motions for a judgment of acquittal and his motion for a new trial because there was insufficient evidence for a jury to find beyond a reasonable doubt that he intended to cause serious physical injury to the victim. We disagree.

### A

"A motion for judgment of acquittal must be granted if the evidence would not reasonably permit a guilty finding. . . . In ruling on a motion for judgment of acquittal, the trial court must determine whether a rational trier of fact could find the crime proven beyond a reasonable doubt." (Citation omitted; footnote omitted.) *State* v. *Nival*, 42 Conn. App. 307, 308–309, 678 A.2d 1008 (1996). Additionally, "[i]n reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict.

Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Franklin*, 175 Conn. App. 22, 30–31, 166 A.3d 24, cert. denied, 327 Conn. 961, 172 A.3d 801 (2017).

"To convict the defendant of manslaughter in the first degree, the state was required to prove beyond a reasonable doubt that (1) the defendant intended to cause serious physical injury to the victim and (2) he caused [the victim's] death. . . . The intent to cause serious physical injury required for a conviction of manslaughter in the first degree under " 53a-55 (a) (1), by definition, require[s] a jury's finding that the defendant caused a physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of a bodily organ. . . . A person's

intent may be inferred from his conduct, as well as the surrounding circumstances, and is an issue for the trier of fact to decide. . . . [A] factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, 54 Conn. App. 26, 30–31, 734 A.2d 1012, cert. denied, 251 Conn. 903, 738 A.2d 1092 (1999).

In the present case, there was sufficient evidence from which the jury reasonably could have inferred that the defendant intended to cause serious physical injury. The evidence presented at trial established that only the defendant and the victim were at their home at the time of the victim's death, and the circumstances of the victim's death made it clear that the victim did not take his own life. Additionally, the nature of the victim's wounds supported the finding that an individual acted with the intent to cause, at the very least, serious physical injury to the victim. Moreover, it was determined that the victim had died shortly after emergency personnel arrived, and that DNA evidence linked the victim and the defendant to a knife recovered from the home. Accordingly, the evidence was sufficient to sustain a conviction of manslaughter in the first degree.

B

"[O]ur standard of review of the trial court's denial of a motion for a new trial is limited to a determination of whether, by such denial, the court abused its discretion. . . . As a reviewing court considering the trial court's decision granting or denying a motion for a new trial, we must be mindful of the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided." (Citations omitted; internal quotation marks omitted.) *State* v. *Roberson*, 62 Conn. App. 422, 425–26, 771 A.2d 224 (2001). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given to the correctness of the [trial] court's ruling." *Palkimas* v. *Lavine*, 71 Conn. App. 537, 544, 803 A.2d 329, cert. denied, 262 Conn. 919, 812 A.2d 863 (2002).

Indeed, "[t]he trial court should not set [aside] a verdict . . . where there [is] some evidence upon which the jury [reasonably could have] based its verdict, but [the court should set aside the verdict] where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [the jurors] or some of them were influenced by prejudice, corruption or partiality." (Internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 601, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008).

In the present case, the defendant argues that because "the only evidence presented at trial leads to the inescapable conclusion that the defendant intended to kill [the victim]," the trial court abused its discretion in denying the defendant's motion for a new trial. Because we hold that there was sufficient evidence for the jury reasonably to find the defendant guilty of manslaughter in the first degree in violation of § 53a-55 (a) (1), we likewise reject the defendant's claim that the trial court's denial of his motion for a new trial was a manifest abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-54a provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[3] The defendant's principal brief presents four claims on appeal. Because the claims regarding the defendant's motion to dismiss filed after the initial probable cause hearing implicate jurisdiction, we address these issues together. See part I of this opinion. We then address, in turn, the defendant's remaining claims regarding the sufficiency of the evidence for his conviction of manslaughter. The sufficiency claim pertains to the defendant's motions for a judgment of acquittal and his motion for a new trial. See part II of this opinion.

[4] General Statutes § 54-46a (a) provides in relevant part that "[n]o person charged by the state . . . shall be put to plea or held to trial for any crime punishable by death, life imprisonment without the possibility of release or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. . . ." As such, a court obtains jurisdiction over any crime punishable by death, life imprisonment without the possibility of release, or life imprisonment upon a finding of probable cause for that crime. See *State* v. *Guess*, 44 Conn. App. 790, 794, 692 A.2d 849 (1997) ("[w]e have held . . . that where evidence offered at a probable cause hearing is insufficient to establish probable cause, the trial court lacks jurisdiction over the defendant's person" [internal quotation marks omitted]), aff'd, 244 Conn. 761, 715 A.2d 643 (1998).

[5] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[6] Practice Book § 41-8 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

"(2) Defects in the information including failure to charge an offense;

* * *

"(4) Absence of jurisdiction of the court over the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial . . . ."

[7] The court, *Alander, J.*, stated the following at the probable cause hearing:

"[T]he elimination of alternative explanation for the victim's death *certainly leads me to suspect* that the defendant is responsible for the death of [the victim] and it may even rise to the level of a strong possibility that the defendant intentionally murdered [the victim] but there's not enough [evidence] to say that the defendant must have been the perpetrator because

we have no other explanation for [the victim's] death.

"The state must provide evidence that establishes the defendant *intentionally caused the death* of [the victim]. It must be more than mere suspicion. It must be enough to warrant a person of reasonable caution to believe that the defendant *intentionally killed* [the victim]. That standard was not met in this case *with respect to the charge of murder*. So I obviously find that the state has not established probable cause to charge [the defendant] *with the murder* of [the victim]." (Emphasis added).

[8] The court, *Alander*, *J.*, had the following exchanges with the parties at the probable cause hearing:

"The Court: Do you have [an] amended information?

"[The Prosecutor]: Yes, sir, I do.

"The Court: Okay. You want to file that?

"[The Prosecutor]: At this time, with the court's permission, I will be filing a substitute information, Your Honor, charging [the defendant] with manslaughter in the first degree.

"The Court: Okay. Now, there's been a bond set I assume for the murder charge. I don't know whether there needs to be a new bond set now, whether you're seeking a new bond. . . .

* * *

"The Court: I believe some reduction is warranted in light of the fact that the charge he's now facing is manslaughter in the [first] degree as opposed to murder but, frankly, I don't think a significant reduction is warranted because the charges he faces are still serious and so I'm going to reduce that bond to [$70,000] cash. . . ."

[9] In *Rasmussen*, the court determined "that in order to meet the third prong of [*State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980)], there must be sufficient evidence, introduced by either the state or the defendant . . . to justify a finding of guilt of the lesser offense." *State* v. *Rasmussen*, supra, 225 Conn. 67–68.